UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNON MCKEIVER,<br><br>Plaintiff<br><br>v.<br><br>SUPERINTENDENT RIVELLO, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 3:25-CV-1718<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Shannon McKeiver, a prisoner proceeding *pro se*, has filed a complaint pursuant to 42 U.S.C. § 1983, alleging that he is receiving inadequate medical care for his knee injuries. (Doc. 1). Pursuant to 28 U.S.C. § 1915A, the Court finds that McKeiver's complaint fails to state a claim, but will grant him leave to file an amended complaint.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

McKeiver's complaint alleges as follows: In October 2023, he was incarcerated at SCI-Huntingdon and was sent to an outside hospital "for surgery on a 'Bone on Bone' Stricture." After surgery, he received physical therapy until December 2023. "Four months later," he began suffering pain and stiffness in both knees all day. He wrote to "medical for pain pill[s]," explaining his knee issues, but "they ignored his complaints and gave him Tylenol and a knee brace."

In September 2024, McKeiver was sent to an outside hospital where he was told "that the [prosthetic] knee came loose." After this hospital visit, defendant Dr. Mahli "called [McKeiver] down and told him that he was going out in a week to get the knee repaired," and

that "he would have surgery at the beginning of the year."[1] However, the surgery or "repair" did not occur. In February 2025, McKeiver wrote a sick call slip "about his knee and the pain he was having." On March 18, he was "called to medical to take X-rays," and on March 26, he was "sent to Pen[n H]ighlands for X-rays" and "told that he would be sent out in 30 days." However, he had not received the surgery as of September 2025, when the complaint was submitted.

McKeiver refers the Court to an "Inmate's Request to Staff Member" he submitted on March 28 (Doc. 1-2), in which he asked: "Is there anything stronger than the pills and cream that you are giving me for the pain in my knee, because they are not working[?]" A staff member responded: "Due to your prior history, we are quite limited in the amount of oral NSAIDs we can use so as not to cause a repeat of peptic ulcer. That is why we are avoiding oral ibuprofen and using only topical NSAIDs. I have ordered for another medication[,] duloxetine[,] to help with the pain. It might take a couple of weeks to kick in. Hopefully, it controls your pain better."

McKeiver lists Superintendent Rivello, "Wellpath Holding Inc.," Dr. Mahli, and Blair Hospital as defendants, but also asserts unspecified claims against "SCI-Huntingdon's medical staff." He asserts that the defendants "failed to correct" his knee issue "when they found out that it was loose, knowing the pain that [he] would have to endure while waiting to have it redone"; failed to "design a safe medical environment"; "fail[ed] to respond to the plaintiff['s] repeated notifications of negligence and refusal of medical attention"; and

---

[1] Although the complaint is unclear, the Court infers that Dr. Mahli made these two remarks in separate conversations with McKeiver.

"refus[ed] to give plaintiff the proper medication for pain." He alleges that he has "suffered multiple injuries including mental and emotional trauma," and seeks declaratory, injunctive, and monetary relief.[2]

## II.     28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the

---

[2] Much of the complaint consists of "conclusory allegations peppered with legal buzzwords," *Taylor v. Pennsylvania*, No. 17-CV-3369, 2018 WL 6574187, at *26 (E.D. Pa. Dec. 12, 2018), which do not explain the factual basis for McKeiver's entitlement to relief, and are therefore disregarded. *See, e.g.*, (Doc. 1 at 4, ¶ 24 ("As a direct and proximate result of these maliciously gross negligence and willful reckless failures by defendants, plaintiff McKeiver has been greatly injured, and his legal rights have been violated.")).

complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals*

4

*Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51

F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

### III.   DISCUSSION

McKeiver alleges that the defendants' treatment of his knee issues violated his Eighth Amendment[3] rights. To state an Eighth Amendment claim based on deliberate indifference to medical needs, a plaintiff must show that (1) he had a serious medical need, (2) the defendant was deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff. *See Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). Courts have found deliberate indifference "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

While the Court does not dismiss any suffering McKeiver has experienced, his complaint does not state a viable Eighth Amendment claim as pled. First, although he claims he is being "refused" medical attention, and medical staff has "failed to do anything" to address his complaints, these conclusory statements are contradicted by the facts in his

---

[3] He also asserts that the defendants' actions "violated [his] right to equal protection of the law," but has not alleged facts showing that he was treated differently from similarly situated individuals, as required for an equal protection claim. *See, e.g.*, *Tennille v. Quintana*, 443 F. App'x 670, 673 (3d Cir. 2011).

complaint and exhibits[4]. For example, he claims that unspecified defendants "ignored his complaints and gave him Tylenol and a knee brace," but the allegation that he received these treatments indicates that his complaints were not "ignored." Although McKeiver disagrees with the treatments offered, "disagreement between the prisoner and medical personnel over the proper course of treatment" does not show deliberate indifference. *Montanez v. Price*, No. 23-2669, 2025 WL 2846695, at *4 (3d Cir. Oct. 8, 2025) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). With respect to pain control specifically, the response to his March 28 request indicates a clinical reason for the medication choices ("we are quite limited in the amount of oral NSAIDs we can use so as not to cause a repeat of peptic ulcer"), and that he was offered additional medication ("duloxetine").

McKeiver asserts a claim based on the delay in receiving surgery, but his complaint does not plead facts showing that any defendant obstructed McKeiver from receiving it. *See Casilla v. New Jersey State Prison*, 381 F. App'x 234, 236 (3d Cir. 2010) ("[T]here is nothing in the record concerning the process for scheduling surgeries, why the delay occurred, or how any of the [defendants] were responsible for the delay."). Dr. Mahli allegedly told him he would receive the surgery, but there is no allegation that this doctor was responsible for treating McKeiver or scheduling the surgery, or that the doctor acted to delay the surgery in any other way.[5]

---

[4] Under the motion-to-dismiss standard applicable at this stage, "if [the plaintiff's] own exhibits contradict [his] allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

[5] Dr. Mahli was allegedly "responsible for the overall care of all inmates housed in SCI-Huntingdon," but this broad assertion of supervisory liability is insufficient to establish personal involvement as to McKeiver specifically. *See Rode*, 845 F.2d at 1208. The same is true of the allegations against Superintendent Rivello, *i.e.*, that Rivello was "responsible for
*(footnote continued on next page)*

7

McKeiver also attempts to sue "Wellpath Holding Inc." ("Wellpath"), the prison medical provider. A private provider such as Wellpath[6] may be an appropriate defendant under Section 1983 if the alleged violation was the result of a corporate policy, custom or practice. *See Montanez*, 2025 WL 2846695, at *5 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). However, McKeiver has not pled facts showing that any events described in the complaint were the result of Wellpath policies or customs, as opposed to the individual decisions of providers and staff. He asserts that "the needs of the inmates should not be the first priority, not saving money," but does not specifically allege how his medical care was delayed or denied for financial reasons. *See Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) ("[T]he complaint's allegation that Winslow was harmed by "policies to save money" is exceedingly conclusory. . . . [T]he naked assertion that Defendants considered cost in treating Winslow's hernia does not suffice to state a claim for deliberate indifference."). General allegations that Wellpath is "responsible" for personnel, training, and "treatment plans" (Doc. 1 at 2, ¶ 7) are insufficient for the same reasons. *See*,

---

all inmates who are housed in SCI-Huntingdon . . . under his care." *See* (Doc. 1 at 1-2, ¶¶ 4, 5). McKeiver also sues Blair Hospital, where he received his initial surgery, but does not explain why the hospital is responsible for the delay in the follow-up surgery or any other denial or delay of medical care.

[6] While the claim against Wellpath will be dismissed without prejudice, any asserted liability against Wellpath "is uncertain in light of Wellpath's discharge from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, for claims that arose prior to November 11, 2024." *Verticelli v. Commonwealth of Pennsylvania*, No. 25-CV-1463, 2025 WL 2831171, at *5 n.5 (E.D. Pa. Oct. 6, 2025) (citing *In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.)).

*e.g.*, *Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("[V]ague and conclusory allegation[s]" of a policy or custom, such as a custom of "inadequate" staffing, are insufficient).

In any amended complaint, McKeiver must describe the specific events and actions of each individual defendant that show why that defendant is liable to him personally. "Alleging personal involvement cannot be accomplished by repeatedly and collectively referring to the 'Defendants' as a group without clarifying the specific acts of each Defendant that forms the basis for that individual's liability." *Graham v. Moon Lodge Chips Corp.*, No. 24-CV-0124, 2024 WL 3275960, at *5 (E.D. Pa. July 1, 2024) (citing *Lawal v. McDonald*, 546 F. App'x 107, 113-14 (3d Cir. 2014)). General statements that a defendant's actions were "malicious," "willful," or "negligent," or that a defendant is broadly "responsible for the care of all inmates" are insufficient. McKeiver may attach medical records or other relevant records if helpful in explaining the facts of his claim.

### IV.   CONCLUSION

The Court will grant McKeiver's motion to proceed *in forma pauperis* (Doc. 3) and permit him to file an amended complaint prior to dismissing this case. *Grayson*, 293 F.3d at 108. An appropriate Order follows.

Dated: October 15, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**